## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| **Juan Carlos Murcia Chavez**, | ) | |
| | ) | |
| Petitioner, | ) | **ORDER GRANTING PETITION** |
| | ) | **FOR HABEAS RELIEF** |
| vs. | ) | |
| | ) | Case No. 1:26-cv-145 |
| **Todd Blanche**, in his acting capacity as | ) | |
| Attorney General of the United States; | ) | |
| **Markwayne Mullin**, in his official capacity | ) | |
| as Secretary of the Department of Homeland | ) | |
| Security; **Todd Lyons**, in his official | ) | |
| capacity as Acting Director of United States | ) | |
| Immigration and Customs Enforcement; | ) | |
| **David Easterwood**, in his official capacity | ) | |
| as Acting Director, St. Paul Field Office, | ) | |
| U.S. Immigration and Customs Enforcement; | ) | |
| **Kelly Leben**, in his official capacity as | ) | |
| Sheriff of Burleigh County; | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the Court on Petitioner Juan Carlos Murcia Chavez's petition for a writ of habeas corpus under 28 U.S.C. § 2241, filed on May 4, 2026. See Doc. No. 1. The Respondents[1] filed a response on May 8, 2026. See Doc. No. 3. The Petitioner field a reply on May 11, 2026. See Doc. No. 6. For the reasons set forth below, the Court grants the petition and orders the Respondents to provide the Petitioner with a bond hearing.

### I.    BACKGROUND

The Petitioner is a citizen of Honduras who has resided in the United States since May of 2021. See Doc. No. 1. He works in construction and lives with his brother, sister, nephews, and nieces in Willmar, Minnesota. Id. The Petitioner does not have any criminal history. Id.

---

[1] The response was filed only on behalf of the federal respondents. Sheriff Kelly Leben did not provide a separate response, nor does the Court find one necessary.

On April 13, 2026, the Petitioner and his brother were driving near Cando, North Dakota, after a day's work at their construction job. Id. The Petitioner's brother was driving, and the Petitioner was seated in the front passenger seat. Id. Both brothers speak Spanish and do not speak English. Id. A police officer out of Devils Lake, North Dakota pulled their vehicle over. Id. After approaching the vehicle's driver's side window, the officer requested the Petitioner's brother's driver's license, which he provided. Id. In Spanish, the officer stated he pulled them over because of their window tint, and proceeded to examine their window's tint percentage. Id. After doing so, and with the Petitioner's brother's driver's license still in his possession, the officer returned to his patrol car. Id. A few minutes later, he returned to the brother's vehicle and informed the Petitioner's brother there was an administrative Immigration and Customs Enforcement ("ICE") detainer for his arrest. Id. The officer placed the Petitioner's brother under arrest, put him in his patrol car, and issued him a moving violation for the window tint. Id.

The officer then approached the passenger side of the brothers' vehicle where the Petitioner was still sitting. Id. The officer asked the Petitioner for identification and the Petitioner provided him with his Minnesota identification card. Id. The officer said, "that's not a good one," and asked to see the Petitioner's passport. Id. The Petitioner handed the officer his Honduran passport. Id. After examining it, the officer ordered the Petitioner out of the vehicle and placed him under arrest, stating in Spanish "you don't speak English, you don't have immigration papers, and you don't have a right to be in the United States." Id.

The officer drove the Petitioner and his brother to the Devils Lake Police Station. Id. ICE agents later arrived to examine the Petitioner's immigration status. Id. Three days later, on April 16, 2026, the Petitioner was transferred to the Burleigh County Detention Center in Bismarck, North Dakota, where he is still located today. Id.

On May 4, 2026, the Petitioner filed a petition for habeas relief. Id. The Petitioner asserts that his detention under 8 U.S.C. § 1225(b)(2) is unlawful due to multiple violations of his rights guaranteed by the Fourth Amendment and Fifth Amendment. Id. On May 5, 2026, the Court ordered the Respondents to respond to the Petition within three days. See Doc. No. 2. The Respondents timely filed their response (Doc. No. 3), to which the Petitioner filed a reply. See Doc. No. 6.

## II.    LEGAL ANALYSIS

A district court may provide habeas relief to a person who is being detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). That authority includes jurisdiction to hear habeas challenges to detention related to immigration. Zadvydas v. Davis, 533 U.S. 678, 687 (2001). The burden is on the Petitioner to prove his detention is unlawful by a preponderance of the evidence. See Aditya W. H. v. Trump, Civ. No. 25-1976 (KMM/JFD), 782 F. Supp. 3d 691, 702 – 03 (D. Minn. May 14, 2025) (collecting cases).

The Respondents argue that the Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and point to the recent Eighth Circuit Court of Appeals case, *Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). See Doc. No. 3. In *Avila*, the court interpreted 8 U.S.C. § 1225(b)(2)(A) to require detention of any non-citizen present in the United States who has not been admitted, regardless of whether they are arriving at the border or within the interior, if an examining officer determines that the non-citizen seeking admission "is not clearly . . . entitled to be admitted." See Avila, 2026 WL 819258, at *3-4. The Petitioner acknowledges the *Avila* decision,[2] but clarifies that he challenges his detention on constitutional grounds not

---

[2] The Petitioner states that "for preservation purposes," he contends that the Respondent's position that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) is untenable, "especially given the emerging circuit split on the

foreclosed by Avila. See Doc. No. 1. The decision in *Avila* says nothing about whether the Petitioner's (Chavez) detention comports with due process.

Specifically, the Petitioner alleges that his detention infringes upon his procedural rights under the Due Process Clause of the Fifth Amendment. See Doc. No. 1. The Respondents contend this argument is without merit because "mandatory detention of an alien pending deportation is not a violation of the alien's right to procedural due process.'" See Doc. No. 3, p. 14 (citing Alvacora v. Olson, No. 0:26-CV-00675-DMT-SGE, 2026 WL 220417, at *4 (D. Minn. Jan. 28, 2026) (quoting Demore v. Kim, 538 U.S. 510, 529-31 (2003))). The Court disagrees with that broad statement. While the executive branch has made fundamental changes to immigration policy over the last year, such changes remain "subject to important constitutional limitations[,]" as the Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; see also A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (per curiam) (procedural due process protections apply to removal proceedings for persons detained under the Alien Enemies Act).

"It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025). The fundamental requirement in providing due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (citation omitted). However, in the immigration context, the United States Supreme Court has found that "Congress regularly makes rules that would be unacceptable if applied to citizens[.]" Mathews v. Diaz, 426 U.S. 67, 79-80 (1976). Thus, the "nature of th[e] protection" to which non-citizens are entitled

---

question." See Doc. No. 1, p. 4 (citing Barbosa da Cunha v. Freden, -- F.4th -- , 2026 WL 1146044, at *23 (2d. Cir. Apr. 28, 2026); Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2026); Buenrostro-Mendez v. Bondi, 166 F.4th 494, 503 (5th Cir. 2026)).

under the Due Process Clause "var[ies] depending upon status and circumstance." Zadvydas, 533 U.S. at 693-94. Therefore, this Court will consider what protections the Petitioner is entitled to as a non-citizen detained under 8 U.S.C. § 1225(b)(2). See Aleksei M. v. Warden, Lawrence Cnty. Jail, No. CV 05030, 2026 WL 1133615, at *5 (D.S.D. Apr. 27, 2026).

The Petitioner argues the Court should employ the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine whether his detention violates his due process rights. See Doc. No. 1. The Respondents disagree, arguing that the Eighth Circuit Court of Appeals "expressly rejected" the application of the *Mathews* balancing test "[i]n the immigration context" in *Banyee*. See Doc. No. 3, p. 16 (citing to Banyee v. Garland, 115 F.4th 928, 933 (8th Cir. 2024). However, *Banyee*, and the United States Supreme Court case it largely relies upon for support, *Demore*, are distinguishable from the present case. See Banyee, 115 F.4th at 933 (reviewing how Demore v. Kim, 538 U.S. 510, 514 (2001) already "had considered a due-process challenge to" 8 U.S.C. § 1226(c)).

In *Demore*, the United States Supreme Court rejected a due process challenge to 8 U.S.C. § 1226(c), which mandates detention for non-citizens convicted of certain crimes. Demore, 538 U.S. at 530. There, the detainee was a "criminal alien" who was detained for "the limited period of his removal proceedings." Demore, 538 U.S. at 531. Similarly, in *Banyee*, the Eighth Circuit concluded that there was no due process violation when a removable "criminal alien" was detained for more than a year under Section 1226(c). Banyee, 115 F.4th at 930-33. In both *Demore* and *Banyee*, the petitioners were subject to criminal detention because they committed one of the criminal offenses identified in 8 U.S.C. § 1226(c). Since they had been in criminal detention, the courts found the petitioners received "the full procedural protections our criminal justice system offers" *before* being detained pursuant to 8 U.S.C. § 1226(c). Demore, 538 U.S. at 513. In this

case, the Petitioner has received no such procedural protections. The Petitioner is not a "criminal alien" and has not been subjected to criminal detention before being detained pursuant to 8 U.S.C. §1225(b)(2). See Doc. No. 1. Rather, Executive Branch officials simply changed their mind—and upended decades of practice—by deciding that he has been subject to mandatory detention under 8 U.S.C. § 1225(b)(2) since the day he entered the United States.

Relying on this distinction between Section 1226(c) and Section 1225(b)(2), many district courts within the Eighth Circuit have proceeded to analyze the factors established by *Mathews* when reviewing due process claims brought by detained non-citizens like the Petitioner. See Aleksei M., No. CV 05030, 2026 WL 1133615, at *5 (collecting cases). This Court will follow suit. Even accepting that 8 U.S.C. § 1225(b)(2) mandates detention under *Avila*, the question of whether constitutional due process claims must still be considered is clear—they must be carefully considered. *Avila* did not address whether non-citizens mandatorily detained under 8 U.S.C. § 1225 can still challenge their detention as a violation of constitutional due process. Fairness and common sense mandate that such challenges are not precluded from consideration.

The three factors set forth in *Mathews* to consider in determining whether civil detention violates a detainee's right to procedural due process are: (1) "the private interest that will be affected by" his detention; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. As to the first factor, "the most elemental of liberty interests [is] the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529-31 (2004). It cannot seriously be disputed that the Petitioner has a cognizable liberty

6

interest in remaining out of custody. The Petitioner is currently in custody in the Burleigh County Detention Center, at which pretrial criminal detainees and convicted criminals are also held. See Günaydin v. Trump, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2005) (stating that under the first *Mathews* factor, courts "consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration."). The Court finds that the first *Mathews* factor favors the Petitioner.

The second *Mathews* factor considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." Darvin M. v. Bondi, 817 F. Supp. 3d 740, No. 26-cv-0437, 2026 WL 184843, at *6 (D. Minn. Jan. 24, 2026) (quoting Günaydin, 784 F. Supp. 3d at 1187). Here, the risk of erroneous deprivation is high since the Respondents are proposing *no procedure* at all. See e.g., Pedro A.D.L.O.O. v. Bondi, No. CV 26-1959 (DWF/DJF), 2026 WL 948970, at *3 (D. Minn. Apr. 8, 2026); Syed Abbas v. Schneider, No. 4:26-CV-00132, 2026 WL 1079292, at *8 (S.D. Iowa Apr. 17, 2026); Aleksei M., No. CV 05030, 2026 WL 1133615, at *6. The second factor weighs in favor of the Petitioner.

The third *Mathews* factor requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. The burden on the Respondents in providing the Petitioner a bond hearing would be minimal at best. Additionally, there is no evidence that the Petitioner has a criminal history or that he is a flight risk. To the contrary, the record shows he has no criminal history, is gainfully employed, and has many family members living in the United States. Thus, although "ensuring that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest," Maldonado v. Olson, 795

F. Supp. 3d 1134, 1153-54 (D. Minn. 2025); Günaydin, 784 F. Supp. 3d at 1189–90, the interest is not implicated here in any meaningful way. The third *Mathews* factor also favors the Petitioner.

As the *Mathews* factors weigh strongly in favor of the Petitioner, the Court finds that his current detention is in violation of his rights under the Due Process Clause.[3] A person has a viable due process claim even if his initial detention may have been authorized by 8 U.S.C. § 1225. The Court finds that requiring a bond hearing before an Immigration Judge will balance the interests of the Petitioner and the Respondents. A bond hearing does not mandate release. The administrative burden of such a hearing is minimal, particularly when measured against the liberty interests at stake.

### III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.  The Petitioner's petition for writ of habeas corpus (Doc. No. 1) is **GRANTED** to the extent that he shall receive a bond hearing before an Immigration Judge.

2.  The Respondents are **ORDERED** to provide the Petitioner with a bond hearing before an Immigration Judge within seven (7) days of the date of this Order.

3.  If the Respondents do not provide the Petitioner with a bond hearing in accordance with this Order, the Petitioner must be immediately released from detention.

4.  Within ten (10) days of the date of this Order, the Respondents shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order,

---

[3] The resolution of the due process claim in the Petitioner's favor makes it unnecessary to address the habeas petition's remaining grounds.

or if no bond hearing was held, advise the Court regarding the date, time, and location of the Petitioner's release.

**IT IS SO ORDERED.**

Dated this 18th day of May, 2026.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court